IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ARLYN P. ILDEFONSO, | ) | 4:13CV3110 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| BRIAN GAGE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before me on Petitioner Arlyn P. Ildefonso's Amended Petition for Writ of Habeas Corpus (Filing No. 13) in which he challenges his convictions for first degree murder and use of a firearm to commit a felony. For the reasons explained below, I will dismiss Ildefonso's habeas corpus action with prejudice. In addition, I will deny his discovery motions, request to "expand the record," and requests for the appointment of counsel (Filing Nos. 58, 59, and 60).

## I. BACKGROUND

**A.    Conviction and Sentence**

I recite the facts of the crimes as found by the Nebraska Supreme Court in *State v. Ildefonso (Ildefonso I), 634 N.W.2d 252 (Neb. 2001)* (affirming Ildefonso's convictions for first degree murder and use of a firearm to commit a felony, but remanding for resentencing).

At approximately 4 a.m. on September 13, 1999, Omaha police found the body of [Carr] Hume, a retired minister, lying in the street and on the curb in front of 2527 South 42d Street. Hume had been shot in the right side of his face. His hands were still in the pockets of his sports coat, and his wallet contained $1,029. The blood evidence indicated that Hume had been shot at that location.

Based on the report of an informant, two suspects were identified and arrested. While preparing to interview one of the suspects, Officer Melvin McCowen of the Omaha Police Department received an anonymous call stating that the police had arrested the wrong persons. The caller, subsequently identified as Amy Taylor, said that Ildefonso was responsible for the shooting. Taylor called the police after she heard on the news that one of the suspects had been arrested for the Hume murder. Taylor told police that she was staying with Ildefonso at the Ben Franklin Motel and that Ildefonso had told her he shot Hume because Ildefonso was mad at his girlfriend, Kristine Reh, and he "wanted the world to feel his pain." Taylor said she met Reh and a friend of Reh's, Christina Devore-Alexander, when they came to the motel to purchase drugs from Ildefonso. Devore-Alexander had also told Taylor that Ildefonso confessed to shooting Hume.

Taylor also told police that she had seen Ildefonso with several guns, including a .357-caliber revolver and a 9-mm handgun. At McCowen's request, Taylor obtained bullets from the guns in Ildefonso's backpack and left the bullets with a desk clerk at the Ben Franklin Motel. McCowen picked up the bullets, which included two expended shells, one live .357-caliber round, and one live 9-mm round. Because the .357-caliber bullet was similar to the bullet taken from Hume's body, McCowen requested a comparison by the crime laboratory.

Devore-Alexander testified at trial that she and Reh were high school friends and that on September 13, 1999, Reh had called her and asked for a ride because Reh and Ildefonso, Reh's boyfriend, were arguing. Ildefonso was upset because Reh had another boyfriend and the boyfriend was about to be released from a correctional center. Devore-Alexander picked up Reh and Ildefonso, and they drove around Omaha, with Ildefonso giving directions. Near 42nd and Bancroft Streets, Ildefonso directed Devore-Alexander to stop the car. When Ildefonso got out, Devore-Alexander turned to talk to Reh, who was in the rear seat. Devore-Alexander said she heard a gunshot, turned around, and saw Ildefonso with his arm extended and a gun in his hand. Hume was lying on the ground.

Ildefonso returned to the car with the gun in his hand and told Devore-Alexander to drive. She drove to her grandmother's house on North 52nd Street, where the group stayed for about 3 hours. Devore-Alexander stated that Ildefonso threatened to kill her and Reh if they said anything about the shooting and told them that his life was in their hands. At about 6 a.m., Devore-Alexander gave Ildefonso and Reh a ride to Reh's car. Devore-Alexander then returned to her grandmother's house. Devore-Alexander testified that prior to the shooting, Ildefonso told her "the only thing that would make him feel better is if he shot somebody."

Reh testified at trial that after Devore-Alexander stopped her car near 42nd and Bancroft Streets, Reh heard a gunshot and saw a man lying on the sidewalk as they left the area. Reh also said that she, Devore-Alexander, and Ildefonso had taken drugs together and that Ildefonso was using methamphetamine the night of the shooting.

On October 1, 1999, police took steps to obtain a warrant to search Ildefonso, a blue 1991 Chevrolet Cavalier, and a room at the Ben Franklin Motel on Interstate 80. Officer Anthony Strong began surveillance of the motel at 8 a.m. At about 11:30 a.m., Strong saw Ildefonso and Taylor leave the motel room, load the car, and stop at the motel office. When they left the motel, Strong notified Sarpy County sheriff's officers that Ildefonso and Taylor were northbound on Interstate 80. The Sarpy County officers pulled over the car at the Harrison Street overpass. The officers told Taylor, the driver, to turn off the car's engine and throw out the keys. Taylor and Ildefonso, who was sitting in the passenger's seat, were then removed from the vehicle. Strong saw a .357-caliber revolver under the passenger's seat of the car, and a 9-mm handgun was found in a backpack in the rear seat.

Daniel Bredow, senior crime laboratory technician and firearms toolmarks examiner with the Omaha Police Department, testified that the bullet from the .357-caliber revolver was consistent with the bullets left with the desk clerk at the motel and with the bullet removed from Hume's body.

The jury found Ildefonso guilty of first degree murder and use of a firearm to commit a felony. He was sentenced to life imprisonment without parole for the murder charge and to a consecutive term of 40 to 45 years' imprisonment for the use of a firearm charge.

## B.    Direct Appeal

Ildefonso appealed his convictions and sentences. Different attorneys represented Ildefonso at trial and on direct appeal. (Filing No. 20-6.)

The Nebraska Supreme Court heard Ildefonso's direct appeal, and affirmed his convictions. However, the court vacated Ildefonso's sentences, finding the state district court incorrectly granted Ildefonso credit for time served against his life sentence. The Nebraska Supreme Court remanded Ildefonso's case for resentencing with directions that the state district court apply credit for time served to the conviction for use of a firearm to commit a felony. *Ildefonso I*, 634 N.W.2d at 266.

## C.    Post-Conviction Action and Appeal

Ildefonso filed an amended motion for post-conviction relief in the state district court on December 2, 2011, raising essentially the same arguments he raises in this habeas corpus action. (Filing No. 20-13 at CM/ECF p. 149 to Filing No. 20-14 at CM/ECF p. 85.) The state district court denied the motion on March 8, 2012, without granting an evidentiary hearing. (Filing No. 20-13 at CM/ECF pp. 31-45.)

Ildefonso appealed the state district court's order denying post-conviction relief. The Nebraska Supreme Court heard the appeal. On November 28, 2012, the Nebraska Supreme Court affirmed the state district court's decision to deny post-conviction relief. *State v. Ildefonso* (*Ildefonso II*), S-12-0263 (Neb. Nov. 28, 2012) (unpublished) (available in the state-court records at Filing No. 20-2).

**D.     Federal Habeas Corpus Action**

Ildefonso filed a habeas corpus petition in this court on June 6, 2013 (Filing No. 1).  He filed an amended petition for writ of habeas corpus ("amended petition") on November 15, 2013 (Filing No. 13).  Ildefonso's amended petition is the operative petition in this action.

Respondent filed an answer, amended answer, brief, amended brief, reply brief and the relevant state court records in response to the amended petition (Filing Nos. 20, 21, 24, 28, 29, 44, 45, and 50).  Ildefonso filed two briefs in support of his petition.  (Filing Nos. 36 and 49.)  This matter is fully submitted for disposition.

## II.  STANDARDS OF REVIEW

**A.     Exhaustion Requirement**

As set forth in 28 U.S.C. § 2254:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)     the applicant has exhausted the remedies available in the courts of the State; or

    (B)     (i)     there is an absence of available State corrective process; or

        (ii)     circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief.

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

## B.   Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

## C. *Strickland* Standard

I will discuss Ildefonso's arguments under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Strickland*, 466 U.S. at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard as incorrect but whether that determination was unreasonable–a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

## III. DISCUSSION

Ildefonso alleges in this action that his constitutional rights were violated during his trial and direct appeal in Nebraska's state courts. His amended petition sets forth 81 grounds for relief, all of which fall under four distinct categories:

claims that his trial counsel was ineffective (grounds 1 through 59 and 71);

claims that his appellate counsel was ineffective (grounds 75 and 77 through 81);

claims of other constitutional violations that occurred during trial (grounds 60 through 70 and 72 through 74); and

a claim that he is actually innocent (ground 76).

All of Ildefonso's arguments about his trial counsel's performance, and about constitutional violations that occurred at trial, are procedurally defaulted. Under

Nebraska law, Ildefonso was required to raise such arguments on direct appeal because they were known to him and could have been litigated at that time.  *See State v. Seberger*, 815 N.W.2d 910, 915 (Neb. 2012).  In addition, he was represented by different attorneys at trial and on direct appeal so he could have raised allegations of ineffective assistance of trial counsel on direct appeal.  *Id.*  He did not raise these arguments on direct appeal; therefore, the claims are procedurally defaulted.

To overcome the procedural default, Ildefonso must show cause for not presenting the claims on direct appeal and prejudice from the failure, or that he is actually innocent.  *See Storey v. Roper*, 603 F.3d 507, 523 (8th Cir. 2010).  For the reasons discussed below, Ildefonso has not shown he was prejudiced by a failure to present the defaulted claims on direct appeal or that he is actually innocent.

For the most part, Ildefonso properly exhausted his arguments about his *appellate* counsel's performance in Nebraska's state courts; therefore, I will address these arguments.  I note that Ildefonso's arguments about his appellate counsel's performance encompass his allegations about his trial counsel's performance and about other constitutional violations that occurred at trial.  Thus, even though Ildefonso's arguments about defects that occurred at trial are procedurally defaulted, I will address the crux of most of his arguments in this opinion.

The road map for the remainder of this opinion will be as follows: First, I will summarize Ildefonso's claims of ineffective assistance of appellate counsel.  Second, I will discuss the claims.  Third, I will address Ildefonso's stand-alone actual-innocence claim.

## A.    Summary of Arguments About Appellate Counsel's Performance

I have summarized and condensed the arguments Ildefonso raised in his amended petition in the paragraphs that follow.  Ildefonso alleged appellate counsel

was ineffective when he failed to raise these arguments on direct appeal (*see* grounds 77 and 81 of the amended petition):

1. The arresting officers lacked jurisdiction to pursue and arrest Ildefonso outside of Douglas County, Nebraska, and trial counsel failed to challenge Ildefonso's arrest on this basis. (Grounds 1 and 62, Filing No. 13 at CM/ECF pp. 4-5, 100-101.)

2. Trial counsel failed to discuss the State's evidence with Ildefonso prior to trial. (Ground 2, Filing No. 13 at CM/ECF pp. 5-8.)

3. Trial counsel failed to interview or contact the potential defense witnesses identified by Ildefonso. (Ground 3, Filing No. 13 at CM/ECF pp. 8-10.)

4. Trial counsel failed to collect exculpatory evidence from Vicky DeLozier and also failed to call her as a witness. (Grounds 4 and 46, Filing No. 13 at CM/ECF pp. 10-11, 75-76.)

5. Trial counsel failed to depose Christina Devore-Alexander, Amy Taylor, and Kristine Reh. (Ground 5, Filing No. 13 at CM/ECF pp. 12-13.)

6. Trial counsel failed to file a "Motion for Disclosure of Intention to Use Evidence of Prior Convictions." (Grounds 6 and 7, Filing No. 13 at CM/ECF pp. 13-16.)

7. Trial counsel failed to file a "Notice of Intent to Use a[n] Alibi Defense." (Ground 8, Filing No. 13 at CM/ECF pp.16-18.)

8. Trial counsel failed question Deputy Mark Trapp during a suppression hearing about whether a recording of the traffic stop existed. (Ground 9, Filing No. 13 at CM/ECF pp. 18-19.)

9. Trial counsel failed to object when the prosecutor, rather than the witness, identified Ildefonso during a suppression hearing. (Ground 10, Filing No. 13 at CM/ECF pp. 20-21.)

10. Trial counsel failed to properly question witnesses during the suppression hearing to show that no exigent circumstances existed for the traffic stop and subsequent search. (Ground 11, Filing No. 13 at CM/ECF pp. 21-22.)

11. Trial counsel failed to call Amy Taylor as a witness during the suppression hearing to show that the information contained in the application for the search warrant was false. (Ground 12, Filing No. 13 at CM/ECF pp. 23-24, 86-87.)

12. The affidavit supporting the application for the search warrant was insufficient. (Grounds 13, 53, and 54, Filing No. 13 at CM/ECF pp. 24-26, 86-88.)

13. Trial counsel failed to object to the State's request to reopen its case during the suppression hearing. (Ground 14, Filing No. 13 at CM/ECF pp. 26-27.)

14. Trial counsel failed to move for a continuance after the court denied the motion to suppress. (Ground 15, Filing No. 13 at CM/ECF pp. 28-29.)

15. Trial counsel failed to file a proper motion in limine that separately set forth all of the evidence sought to be excluded. (Grounds 16 and 17, Filing No. 13 at CM/ECF pp. 29-32.)

16. Trial counsel failed to object to various witnesses on the basis that the State either failed to timely endorse them on the information or failed to endorse them at all. (Grounds 18 through 24 and 63 through 65, Filing No. 13 at CM/ECF pp. 32-42, 102-105.)

17. Trial counsel failed to request a new jury pool after a potential juror stated she believed Ildefonso was guilty. (Ground 25, Filing No. 13 at CM/ECF pp. 43-44.)

18. Trial counsel failed to move to strike for cause a potential alternate juror who was a police officer. (Ground 26, Filing No. 13 at CM/ECF pp. 44-46.)

19. Trial counsel failed to object to the lack of minority representation on the jury and failed to question the potential jurors regarding their race during jury selection. (Grounds 27 and 28, Filing No. 13 at CM/ECF pp. 45-48.)

20.    Trial Counsel failed to object when the prosecutor stated Ildefonso killed Carr Hume during opening statements. (Grounds 29 and 66, Filing No. 13 at CM/ECF pp. 48, 105-106.)

21.    Trial counsel failed to collect and offer material, exculpatory evidence. (Ground 30, Filing No. 13 at CM/ECF pp. 49-50.)

22.    Trial counsel failed to offer any audio or video recording of Ildefonso's arrest and booking. (Ground 31, Filing No. 13 at CM/ECF pp. 51-52.)

23.    Trial counsel failed to subpoena a copy of Ildefonso's registration form from the Best Western Regency Hotel in Omaha. (Grounds 32 and 44, Filing No. 13 at CM/ECF pp. 53-54, 72-73.)

24.    Trial counsel failed to investigate Amy Taylor's administration of Ildefonso's pain medication for his gunshot wound around the time of Ildefonso's arrest. (Ground 33, Filing No. 13 at CM/ECF pp. 55-56.)

25.    Trial counsel failed to subpoena news and media records about Carr Hume's murder. (Grounds 34 and 35, Filing No. 13 at CM/ECF pp. 56-59.)

26.    Trial counsel failed to object to State's exhibits 13 and 15, which were photographs of a baseball hat and a tissue-like substance. (Grounds 36 and 37, Filing No. 13 at CM/ECF pp. 60-63.)

27.    Trial counsel failed to properly cross-examine Amy Taylor, Kristine Reh, Anthony Strong, Melvin McCowen, and Daniel Bredow. (Ground 38, Filing No. 13 at CM/ECF pp. 63-64.)

28.    Trial counsel failed to object when the prosecutor identified the firearms at trial instead of allowing Melvin McCowen to identify them. (Grounds 39 and 67, Filing No. 13 at CM/ECF pp. 65-66, 106-107.)

29.    Trial counsel failed to object to the prosecutor's leading questions to Melvin McCowen. (Ground 40, Filing No. 13 at CM/ECF pp. 66-67.)

30. Trial counsel failed to object when Melvin McCowen testified that Kristine Reh told him she had seen Ildefonso shoot Carr Hume. (Ground 41, Filing No. 13 at CM/ECF pp. 67-68.)

31. Trial counsel made improper prejudicial comments about Ildefonso during his cross-examination of Christina Devore-Alexander. (Ground 42, Filing No. 13 at CM/ECF pp. 69-70.)

32. Trial counsel improperly "opened the door" for the prosecution to probe Ildefonso's past drug use. (Ground 43, Filing No. 13 at CM/ECF pp. 70-71.)

33. Trial counsel failed to call Mark Anderson as a witness. (Ground 45, Filing No. 13 at CM/ECF pp. 73-74.)

34. Trial counsel failed to call Patricia McWilliams and Lea Leimbach to testify in Ildefonso's defense. (Ground 47, Filing No. 13 at CM/ECF pp. 76-77.)

35. Trial counsel advised Ildefonso not to call defense witnesses or testify on his own behalf. If Ildefonso had presented a defense, he would have been acquitted. (Ground 48, Filing No. 13 at CM/ECF pp. 77-79.)

36. Trial counsel used the term "eyewitness" to describe Christina Devore-Alexander and Kristine Reh when they were not eyewitnesses. Trial counsel also failed to object to the State's use of the term "eyewitness." (Grounds 49 and 50, Filing No. 13 at CM/ECF pp. 80-83.)

37. Trial counsel failed to object to the prosecutor's closing argument. He incorrectly stated Ildefonso always carried a 9-mm handgun. In addition, he implied to the jury that it was Ildefonso's responsibility to defend himself against he charges. (Grounds 51 and 52, Filing No. 13 at CM/ECF pp. 83-85.)

38. Trial counsel failed to file a meaningful motion for new trial. (Ground 55, Filing No. 13 at CM/ECF pp. 88-90.)

39. Trial counsel failed to advise Ildefonso of his right to present mitigating evidence at sentencing. (Ground 56, Filing No. 13 at CM/ECF pp. 90-91.)

40. Trial counsel improperly advised Ildefonso not to speak on his own behalf at sentencing. (Ground 57, Filing No. 13 at CM/ECF pp. 92-93.)

41. Trial counsel failed to preserve material evidence, including a personal letter from Kristine Reh to Ildefonso, which included information contradicting her statements to police and supporting Ildefonso's claim of innocence. (Ground 58, Filing No. 13 at CM/ECF pp. 93-95.)

42. Trial counsel's cumulative errors deprived Ildefonso of a fair trial. (Grounds 59 and 71, Filing No. 13 at CM/ECF pp. 95-96, 111-112.)

43. The magistrate judge improperly issued the search warrant. (Grounds 60 and 61, Filing No. 13 at CM/ECF pp. 97-100.)

44. The trial court erred in admitting exhibit 14, a photograph of a syringe. (Ground 68, Filing No. 13 at CM/ECF pp. 107-108.)

45. The trial court erred in admitting photographs of Carr Hume's body. (Ground 69, Filing No. 13 at CM/ECF pp. 109-110.)

46. At sentencing, the trial judge failed to ask Ildefonso if he had anything to say after he heard Ildefonso's trial attorney say, "Don't say anything. It won't do you any good." (Ground 70, Filing No. 13 at CM/ECF pp. 110-111.)

47. The prosecutor failed to disclose material exculpatory evidence. (Ground 72, Filing No. 13 at CM/ECF pp. 112-114.)

48. Ildefonso was denied a fair trial because the evidence was insufficient to support his convictions. (Grounds 73 and 74, Filing No. 13 at CM/ECF pp. 114-124.)

With respect to appellate counsel's representation on direct appeal, Ildefonso argues:

49. Appellate counsel's cumulative errors worked together to deprive him of due process on appeal. (Ground 75, Filing No. 13 at CM/ECF pp. 125-126.)

50.    Appellate counsel failed to confer with Ildefonso during the direct appeal. (Ground 78, Filing No. 13 at CM/ECF pp. 133-134.)

51.    Appellate counsel failed to identify which information was left out of the application for a search warrant. (Ground 79, Filing No. 13 at CM/ECF pp. 134-135.)

52.    Appellate counsel failed to argue that the search warrant did not extend to a search of the automobile and there were no exigent circumstances to justify searching the automobile. (Ground 80, Filing No. 13 at CM/ECF pp. 136-137.)

**B.    Arguments Summarily Rejected by the Nebraska Supreme Court**

The Nebraska Supreme Court considered and *summarily* rejected nearly all of Ildefonso's arguments summarized above in its order affirming the state district court's denial of post-conviction relief. *See Ildefonso II* (Filing No. 20-2). The arguments summarily rejected included those raised in the following grounds of the amended petition: 1-17, 25-40, 44-47, 49-50, 53-62, 66-75, and 78-80.

As to these grounds, the Nebraska Supreme Court wrote:

The majority of Ildefonso's claims may be summarily dismissed because they clearly allege only conclusions of fact or law, or the records and files affirmatively show that Ildefonso is not entitled to relief. For example, Ildefonso alleged that his appellate counsel was ineffective for not raising his trial counsel's failure to collect and offer material, exculpatory evidence. This allegation alleges only conclusions of fact or law and does not warrant an evidentiary hearing. Similarly, Ildefonso's allegations making only general assertions of prejudice, or no assertion of prejudice at all, are insufficient because he has not alleged how specific evidence would have affected the outcome of the trial.

There are also many allegations for which the records and files in this case affirmatively show that Ildefonso is not entitled to relief. For example, Ildefonso alleged that his appellate counsel was ineffective for failing to raise issues related to the search warrant. But because Ildefonso

left the hotel in a car, and the police had probable cause to believe that evidence of a crime was within the car, the police did not need a warrant to stop and search the car. [] As such, regardless whether his trial counsel's performance was deficient on issues related to the search warrant, there was no resulting prejudice.

After reviewing Ildefonso's claims and the record, we conclude that only a few allegations require discussion. These are allegations 21-30, 49, 50, 51, 56, 59 and 60.[1] We summarily reject Ildefonso's other claims.

*Ildefonso II* (Filing No. [20-2 at CM/ECF pp. 18](#)-19). The Nebraska Supreme Court's resolution of these claims is entitled to deference, even though the resolution was summary in nature. *See*, *e.g.*, *[Weaver v. Bowersox](#)*, 438 F.3d 832, 839 (8th Cir. 2006) (holding that the state court's summary disposition of claims on the merits is entitled to deference even though the state court did not specifically discuss the claims) (citing *[Brown](#)*, 371 F.3d at 462)).

Ildefonso did not argue, much less establish, that the Nebraska Supreme Court's rejection of any of these arguments was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Moreover, the Nebraska Supreme Court's decision to refuse to consider claims that alleged only conclusions of fact or law was based on a firmly established state procedural rule. That is, in Nebraska, if a post-conviction motion alleges only conclusions of fact or law, then the court is not required to grant an evidentiary hearing. *See*, *e.g.*, *[State v. Dragon](#)*, 843 N.W.2d 618, 623 (Neb. 2014); *[State v. Fox](#)*, 840 N.W.2d 479, 485 (Neb. 2013); *[State v. Baker](#)*, 837

---

[1]These allegations—those that were *not* summarily rejected by the Nebraska Supreme Court—correspond to the arguments raised in grounds 18-24, 41-43, 48, 51-52, and 63-65 of Ildefonso's amended petition in this case. The court will discuss these argument later in this order.

N.W.2d 91, 96 (Neb. 2013); *State v. Marks*, 835 N.W.2d 656, 661 (Neb. 2013); *State v. Branch*, 834 N.W.2d 604, 607 (Neb. 2013).

For these reasons, Ildefonso is not entitled to relief based on any of the arguments raised in grounds 1-17, 25-40, 44-47, 49-50, 53-62, 66-75, and 78-80 of the amended petition.[2] In addition, Ildefonso is not entitled to relief based on the arguments raised in grounds 77 and 81 of the amended petition. It is in these grounds for relief that Ildefonso asserted that appellate counsel was ineffective for failing to raise the summarily-rejected arguments on direct appeal.

Finally, I have independently analyzed the arguments raised in each of these grounds of the amended petition. I have concluded that all of the arguments are conclusory, based only on general assertions of prejudice or no assertions of prejudice at all, or are meritless. To discuss my reasoning for each of these arguments would unduly prolong the length of this opinion, and it is unnecessary in light of the extremely deferential standard of review that applies to the factual and legal conclusions of the state courts.

---

[2]The Nebraska Supreme Court did not identify which of Ildefonso's arguments it summarily dismissed based on procedural grounds—*i.e.*, because Ildefonso alleged only conclusions of fact or law—and which it summarily dismissed as plainly meritless. But the distinction makes no difference here. Even if the state court's rejection of some of these arguments was based on procedural grounds, then Ildefonso needed to demonstrate "cause" and "prejudice" to excuse his failure to properly raise the arguments in state court; he did not do so. *See Walker v. Martin*, 562 U.S. 307, 316 (2011) ("[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.") (internal citations and quotation marks omitted).

**C.    Grounds 18-24 and 63-65**

Ildefonso argues appellate counsel was ineffective when he failed to argue on direct appeal that Ildefonso's trial counsel should have objected to various witnesses on the basis that the State either failed to timely endorse them on the information or failed to endorse them at all in violation of Neb. Rev. Stat. § 29-1602.  (Filing No. 13 at CM/ECF pp. 32-42, 102-104.)

Ildefonso is not entitled to relief here.  The prosecution's failure to comply with the endorsement requirements set forth in Nebraska's state statutes raises an issue of state law.  It is well established that errors of state law do not provide a basis for habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Moreover, Ildefonso cannot show that he was prejudiced by appellate counsel's failure to challenge the late endorsement or lack of endorsement of witnesses on direct appeal.  The Nebraska Supreme Court considered and rejected the argument in Ildefonso's post-conviction action.  *See Ildefonso II* (Filing No. 20-2 at CM/ECF pp. 19-22).  There is nothing in the record to suggest the result would have been different if the argument had been raised on direct appeal.  Accordingly, Ildefonso is not entitled to relief based on any of the arguments asserted in grounds 18-24 and 63-65 of the amended petition.

**D.    Ground 41**

Ildefonso argues appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel failed to object when Melvin McCowen testified that Kristine Reh told him she saw Ildefonso shoot Carr Hume.  Ildefonso contends Reh

did not testify at trial that she saw Ildefonso shoot Hume; therefore, McCowen's testimony was false.[3]  (Filing No. 13 at CM/ECF pp. 67-68.)

Ildefono's argument is meritless.  The trial record reflects McCowen testified as to what Reh told him during an interview on October 1, 1999, not as to what Reh stated at trial.  (Filing No. 20-22 at CM/ECF p. 51.)  Therefore, appellate counsel was not ineffective for failing to challenge McCowen's testimony as "false."

Moreover, Ildefonso cannot show that he was prejudiced by appellate counsel's failure to challenge McCowen's testimony as false.  The Nebraska Supreme Court considered and rejected the argument in Ildefonso's post-conviction action.  *See Ildefonso II* (Filing No. 20-2 at CM/ECF pp. 22-23).  There is nothing in the record to suggest the result would have been different if the argument had been raised on direct appeal.  Accordingly, Ildefonso is not entitled to relief based on ground 41 of the amended petition.

**E.**  **Ground 42**

Ildefonso argues appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel made improper prejudicial comments about Ildefonso during his cross-examination of Christina Devore-Alexander.  (Filing No. 13 at CM/ECF pp. 69-70.)  Ildefonso argues trial counsel's comments "painted [him] in a negative light."  (Filing No. 13 at CM/ECF p. 69.)

The Nebraska Supreme Court considered and rejected this argument in its order affirming the state district court's denial of post-conviction relief.  The court wrote:

---

[3]The Nebraska Supreme Court determined on direct appeal that the statement was inadmissible hearsay, but that its erroneous admission was harmless error.  *Ildefonso I*, 634 N.W.2d at 265.

The record shows that Ildefonso's trial counsel asked Devore-Alexander why she had gone to pick up Reh on the night of the murder:

> Q. And your primary purpose in going to the Best Western Regency was to intervene between the defendant and Ms. Reh who you knew were in an argument about this [other guy] Juan?
>
> A. Right.
>
> Q. Is that correct?
>
> A. Right.
>
> Q. And you feared, I guess, for Ms. Reh's safety because of the argument that she was having with the defendant?
>
> A. She had told me that he tried to strangle her before, and I seen him a couple of times get up real close in her face.
>
> Q. So I guess the answer to my question is, yes, you were afraid for her safety - -
>
> A. Yes. Yes.
>
> Q. Because of what you thought might happen to Ms. Reh?
>
> A. Yes.

And just after this exchange, Ildefonso's trial counsel again referred to Reh being afraid of Ildefonso.

It is unclear why Ildefonso's trial counsel asked about Devore-Alexander's motivation for picking up Reh on the night of the murder.

Later in his cross-examination, Ildefonso's trial counsel attacked Devore-Alexander's credibility by implying that she was not afraid for Reh's safety because after the shooting she dropped Reh and Ildefonso off at the same location. From our review of the record, however, it is difficult to say that Ildefonso's trial counsel made a reasonable strategic decision in pursuing this line of questioning - - it offered no benefit to Ildefonso and could have portrayed Ildefonso as a "bad guy" to the jury.

Even so, Ildefonso must still prove that he was prejudiced by this deficient performance. In addressing the prejudice component of the *Strickland* test, we focus on whether a trial counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. [] To show prejudice, Ildefonso must demonstrate a reasonable probability that but for his counsel's deficient performance, the result of the proceeding would have been different. [] A reasonable probability is a probability sufficient to undermine confidence in the outcome. []

This exchange between Ildefonso's trial counsel and Devore-Alexander does not undermine our confidence in the outcome of the trial. Devore-Alexander's motivation for picking up Reh was irrelevant to the crimes charged. And Ildefonso's trial counsel's questions, and Devore-Alexander's answers, did not change the rest of Devore-Alexander's testimony. She testified that she let Ildefonso out of the car and that she later heard a gunshot. When she looked up, she saw Ildefonso holding a gun, arm extended toward Hume, whose body was lying on the ground. Under these circumstances, and considering the wealth of other evidence supporting Ildefonso's conviction, we conclude that Ildefonso was not prejudiced by his counsel's questions.

*Ildefonso II* (Filing No. [20-2 at CM/ECF pp. 23](#)-25).

I must grant substantial deference to the Nebraska Supreme Court's decision on this issue. The Nebraska Supreme Court reviewed all of the evidence and determined, based on *Strickland,* that Ildefonso was not prejudiced by the relevant exchange between trial counsel and Devore-Alexander. Ildefonso did not argue, much less establish, that the Nebraska Supreme Court's decision on this issue was

based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

More to the point here, Ildefonso was not prejudiced by his appellate counsel's failure to raise the argument on direct appeal. The Nebraska Supreme Court considered and rejected the argument in the post-conviction action. There is nothing in the record to suggest the result would have been different if the argument had been raised on direct appeal instead. Accordingly, Ildefonso is not entitled to relief based on ground 42 of the amended petition.

## F.      Ground 43

Ildefonso argues appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel improperly "open[ed] the door" for the prosecution to probe Ildefonso's past drug use. Specifically, Ildefonso argues that, when trial counsel asked Christina Devore-Alexander about her history of drug use, she discussed using drugs with Ildefonso. This allowed the State to follow up with additional questions about Devore-Alexander's drug use with Ildefonso. (Filing No. 13 at CM/ECF pp. 70-71.)

The Nebraska Supreme Court considered whether trial counsel's performance was deficient. The court wrote:

> Ildefonso's trial counsel's decision to ask Devore-Alexander about her history of drug use was a reasonable strategic decision because it called into question her ability to recall information. Her answers revealed that she was getting high every day in the months before the murder, though she then said she did not use drugs on the day of, or the days before, the murder. She also testified to a lack of memory on many questions. Logically, it seems that frequent drug use could cause a person to not remember specific details. Considering these circumstances, it was a

reasonable strategic decision to inquire into her history of drug use to attack her credibility. This was not deficient performance, and the files and records show that Ildefonso is not entitled to relief on this issue.

*Ildefonso II* (Filing No. 20-2 at CM/ECF pp. 26-27).

As stated previously in this order, I must grant substantial deference to the Nebraska Supreme Court's findings of fact and conclusions of law. The Nebraska Supreme Court reviewed all of the evidence and determined Ildefonso's trial counsel's decision to question Devore-Alexander about her previous drug use was a reasonable strategic decision. Ildefonso did not argue, much less establish, that the Nebraska Supreme Court's decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

More to the point here, Ildefonso was not prejudiced by his appellate counsel's failure to raise the argument on direct appeal. The Nebraska Supreme Court considered and rejected the argument in the post-conviction action. There is nothing to suggest the result would have been different if the argument had been raised on direct appeal instead. Accordingly, Ildefonso is not entitled to relief based on ground 43 of the amended petition.

## G.     Ground 48

Ildefonso argues appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel's performance was deficient when he advised Ildefonso not to present a defense or testify on his own behalf. Ildefonso claims that, had trial counsel presented a defense, Ildefonso would have been acquitted. (Filing No. 13 at CM/ECF pp. 77-79.) Ildefonso did not explain what evidence trial counsel should

have presented or what testimony Ildefonso would have given had he been called to testify.

A federal court cannot grant relief to a habeas petitioner who presents only conclusory claims for relief. That is, "[i]n order to warrant relief[,] . . . a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim. *Mere conclusory allegations will not suffice*." *Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir. 1987). Because Ildefonso offered no facts or argument in support of ground 48, he is not entitled to relief.

## H.    Grounds 51 and 52

Ildefonso argues appellate counsel was ineffective when he failed to argue on direct appeal that trial counsel should have objected to the prosecutor's closing argument. Ildefonso claims the prosecutor incorrectly stated Ildefonso always carried a 9-mm handgun, and also implied to the jury that Ildefonso had a responsibility to defend himself. (Filing No. 13 at CM/ECF pp. 83-85.)

The Nebraska Supreme Court considered and rejected this argument in its order affirming the state district court's denial of post-conviction relief. The court wrote:

> The record and files affirmatively show that Ildefonso is not entitled to relief on these claims. The record shows that the prosecutor did not state that Ildefonso always carried a 9- mm handgun. Instead, the prosecutor stated only that the 9-mm handgun was found in a backpack, exhibit 32, which the defendant "carrie[d] with him pretty much wherever he [went] . . ." And testimony at trial supported that statement. The record also shows that the prosecutor did not imply that it was Ildefonso's burden to prove his innocence. Rather, the prosecutor used the rebuttal argument for its purpose: to rebut the inferences and claims that Ildefonso's trial counsel made during closing argument.

*Ildefonso II* (Filing No. 20-2 at CM/ECF pp. 29-30).

Ildefonso did not rebut the Nebraska's Supreme Court's findings of fact on this issue, nor did he make any effort to do so. Separately, I have reviewed the relevant portions of the prosecutor's closing arguments. (*See* Filing No. 21-6 at CM/ECF pp. 31, 85.) I agree the record affirmatively shows that Ildefonso is not entitled to relief on this claim.

## I. Stand-Alone Actual-Innocence Claim (Ground 76)

Ildefonso argues he is actually innocent of the murder of Carr Hume. The crux of Ildefonso's argument is that Amy Taylor framed him. (Filing No. 13 at CM/ECF pp. 126-127.)

The Supreme Court has not held that a stand-alone claim of actual innocence is cognizable in federal habeas corpus cases, but there is at least some suggestion that such claims are cognizable. *See Nooner v. Hobbs*, 689 F.3d 921, 922 n. 7 (8th Cir. 2012) ("The Supreme Court has suggested that a stand-alone claim of actual innocence may be cognizable.") (citing *House v. Bell*, 547 U.S. 518, 554 (2006); *Herrera v. Collins*, 506 U.S. 390, 417 (1998)). The Supreme Court has not articulated a standard of proof that might apply to such a claim, but some justices have stated that any such standard would be more stringent than that required to prove actual innocence for gateway purposes. *See, e.g.*, *Herrera*, 506 U.S. at 426 (O'Connor, J., concurring) (explaining that an "extraordinarily high" standard of review would apply to any such claim because the conviction under attack presumably would have resulted from an underlying state trial free of any prejudicial constitutional error).

The standard for gateway purposes requires a habeas petitioner to support his allegations with "new, reliable evidence" that was not presented at trial and must show that it was more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *See McQuiggin*, 133 S. Ct. 1924, 1928 (2013); *Schlup v. Delo*, 513 U.S. 298 (1995).

Here, Ildefonso's claim of actual innocence is meritless even if measured against the standard required to prove actual innocence for gateway purposes. He presented no new, reliable evidence. Moreover, the prosecution presented a wealth of evidence against him, including the eye-witness testimony of two individuals—Christina Devore-Alexander and Kristine Reh—who were with him at the time of the murder. Accordingly, Ildefonso is not entitled to relief based on ground 76 of the amended petition.

## IV. PENDING MOTIONS

Ildefonso asked the court to "expand the record" to include a copy of the *original* post-conviction motion he filed in the state district court. (Filing No. 58.) Ildefonso attached the original post-conviction motion to his request to expand the record.

Ildefonso's original motion is irrelevant to his habeas corpus claims. The state district court considered only Ildefonso's *amended* post-conviction motion when it denied Ildefonso post-conviction relief. (*See* Filing No. 20-13 at CM/ECF p. 31.) Moreover, the claims Ildefonso procedurally defaulted are defaulted because Ildefonso failed to raise them in his direct appeal, not because he failed to raise them in his post-conviction action. In any event, I have reviewed the original post-conviction motion and nothing in the document alters my findings in this case. Therefore, I will deny Ildefonso's request to "expand the record" to include his original post-conviction motion.

Ildefonso also seeks leave to conduct discovery in this case so that he can discover various unknown items that will support his claim of innocence. (Filing Nos. 59 and 60.) The records and filings in this case plainly demonstrate that Ildefonso is not entitled to habeas corpus relief. Therefore, I find discovery is unnecessary and I will deny Ildefonso's request to conduct discovery. For these same reasons, I will deny Ildefonso's requests for the appointment of counsel.

## V.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability.  28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for granting certificates of appealability (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined Ildefonso is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1.  This case is dismissed with prejudice and the court will not issue a certificate of appealability.

2.  Ildefonso's discovery motions, request to "expand the record," and requests for the appointment of counsel (Filing Nos. 58, 59, and 60) are denied.

3.  I will enter judgment by a separate document.

DATED this 21ˢᵗ day of March, 2016.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge